UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY A. DOBSON, et al,                            17-CV-1014-LJV-MJR
                                                                     DECISION AND ORDER
          Plaintiffs,

   -v-

LIVINGSTON COUNTY SHERIFF
THOMAS J. DOUGHERTY, et al,

          Defendants.
_____

      This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for all pretrial matters. Plaintiffs Jeffrey Dobson and Shannon Dobson allege that defendants Livingston County Sheriff Thomas J. Dougherty (the "Sheriff"), County of Livingston (the "County"), Brandan J. Flickner, and James Merrick violated Jeffrey Dobson's Fourth and Fourteenth Amendment rights in contravention of Section 1983 of Title 42 of the United States Code ("Section 1983"). (Dkt. No. 10). Presently before the Court is a discovery dispute. The Court resolves the dispute in the manner set forth below.

      *Relevant Facts and Background*

      Plaintiffs commenced this case by filing a summons with notice in New York State Supreme Court, County of Erie, on September 22, 2017. (Dkt. No. 1). Defendants removed the action to the Western District of New York on October 6, 2017 and filed an answer to the summons with notice on October 23, 2017. (Dkt. Nos. 1 and 2). On January 9, 2018, the Court held a preliminary pretrial conference and issued a Case Management Order, setting discovery dates and other deadlines. (Dkt. No. 9). Plaintiffs filed the

complaint that same day, and defendants filed an answer on January 23, 2018. (Dkt. Nos. 10 and 13).

The complaint alleges that on September 21, 2016, at approximately 3:30 p.m., Livingston County Sheriff's Deputy Brandan Flickner responded to a 911-complaint that a black Silverado pick-up truck traveling northbound on Interstate 390 in Avon, New York was driving "all over the highway."[1] Jeffrey Dobson, the driver of the pick-up truck, was exiting the Interstate 390 at East Avon Lima Road in Avon. Upon exiting, Dobson pulled over and stopped. Flickner, who had been waiting for Dobson to exit, pulled up behind the parked pick-up truck and activated his lights. Flickner questioned Dobson and Dobson indicated that he was not under the influence of drugs or alcohol. Dobson also informed Flickner that he was a farmer and was fatigued from working 16-hour shifts, in the field, on each of the previous three days. Flickner reviewed Dobson's Department of Motor Vehicles records and learned that Dobson had a prior alcohol related driving violation. Flickner instructed Dobson to exit the car and then conducted a field sobriety test. Flickner, a Certified Drub Recognition Expert, concluded that Dobson failed several of the tests. Flickner also had Dobson blow into an alco-sensor, which produced a .000% reading. Flickner arrested Dobson for operating a motor vehicle while impaired by drugs, in violation of Section 1194(4) of the New York State Vehicle and Traffic Law. Flickner also issued Dobson a ticket for affixing two stickers on the rear windshield of his vehicle, in violation of Section 375 of the New York State Vehicle and Traffic Law.

Dobson was then taken to the Livingston County Sheriff's Department. He was given a breathalyzer test that was negative for the presence of alcohol. Livingston County

---

[1] The facts set forth herein have been taken from the complaint, the parties' submissions regarding the discovery dispute, and representations made by counsel during appearances before the Court.

Sheriff's Deputy James Merrick, also a Certified Drug Recognition Expert, conducted a second evaluation. Merrick took Dobson's pulse and blood pressure, interviewed him, and administered additional field sobriety tests. Merrick concluded that Dobson was under the influence of narcotics. Dobson was held at the Livingston County Sheriff's Department overnight until he could be arraigned the following morning. He also provided a urine sample during the time he was detained. Toxicology reports from the sample later indicated an absence of drugs in Dobson's body on September 21, 2016. The criminal charges filed against Dobson were ultimately dismissed.

Plaintiffs allege that the Special Traffic Options Program for Driving While Intoxicated ("STOP-DWI") is a policy and program promulgated by the County and the Sheriff. Flickner, a road patrol officer, was working the STOP-DWI Shift at the time he pulled Dobson over and arrested him. Plaintiffs contend that STOP-DWI and the salaries of deputies working the STOP-DWI Shift are funded, in part, through fines paid by drivers convicted of operating motor vehicles under the influence of drugs or alcohol. Plaintiffs allege that deputies such as Flickner and Merrick have a strong motive to make stops and arrests pursuant to STOP-DWI, since an increase in alcohol and drug related convictions secured through STOP-DWI results in a decreased need for monetary support from the County, the Sheriff and the tax-payers. Plaintiffs further contend that STOP-DWI allows the Sheriff to share in the "financial and political benefits" of funding law enforcement positions with fines as opposed to tax dollars. As a result, deputies are commended by the Sheriff for convictions obtained through the program. The complaint alleges that Dobson was arrested not based on probable cause but instead because of his prior arrest for an alcohol related driving violation and because, at the time of the

3

arrest, Flickner was working the STOP-DWI Shift. Plaintiffs' claims include, *inter alia*: (1) false arrest; (2) false imprisonment; (3) malicious prosecution; (4) abuse of process; and (5) assault and battery. The complaint also alleges that STOP-DWI is an unconstitutional policy or program, promulgated by the Sheriff and the County, whereby deputies are encouraged or predisposed to arrest drivers without probable cause in order to obtain monetary gain and other benefits.

On January 30, 2018, the Court received a letter from defense counsel indicating that a discovery dispute had arisen between the parties. Specifically, plaintiffs request the disclosure of the personnel files of Flickner and Merrick (the "Deputies"). Defendants refuse to produce the Deputies' personnel files on the grounds that the information contained therein is irrelevant and not discoverable. Plaintiffs counter that any records discussing the Deputies' participation in STOP-DWI are relevant to their claims. Plaintiffs also request records from an arrest of a different motorist by Flickner on December 15, 2016. Defendants argue that these records are not relevant because the arrest occurred after Dobson's arrest. Plaintiffs maintain that the arrest records are relevant because they could show a pattern or practice by defendants of arresting motorists without probable cause. The parties appeared before the Court on September 13, 2018 for oral argument.[2] At the conclusion of oral argument, the Court instructed defendants to produce the Deputies' personnel files as well as records from the December 15, 2016

---

[2] Defendants also objected to plaintiffs' request to depose the toxicologist who rendered the report as to the testing of the urine sample provided by Dobson on September 21, 2016. During oral argument, defense counsel indicated that defendants did not intend to argue, or introduce evidence, that Dobson had drugs or alcohol in his system on the day of his arrest. Further, defendants were likely to enter into a stipulation to that effect. The Court concluded, based on defendants' representations and plaintiff's ability to retain their own expert, that it would not require defendants to produce the toxicologist for a deposition by plaintiffs.

4

arrest for the Court to review *in camera*.[3]  Plaintiffs and defendants also filed briefs in support of their respective positions.  (Dkt. Nos. 22 and 24).

The Court has reviewed the Deputies' personnel files, the records from the December 15, 2016 arrest, and the parties' written submissions.[4]  The Court orders the following with respect to discovery of these records and documents.

*Personnel Files: Disciplines or Complaints*

Issues of privilege in federal civil rights cases are governed by federal law.  *Martin v. Lamb*, 122 F.R.D. 143 (WDNY 1988).  Thus, Section 50-a of the New York Civil Rights Law does not prohibit the discovery of police personnel records in federal suits.  *Id.*  To that end, courts in the Western District of New York typically direct production of documents contained in an officer's personnel file if the documents are relevant to the constitutional claims and involved disciplinary action taken against the officer.  *Worthy v. City of Buffalo*, 11-CV-872, 2013 U.S. Dist. LEXIS 146242 (WDNY Oct. 9, 2013) (Schroeder, M.J.) ("[B]ecause the [personnel] records contained no evidence of a prior, substantiated claim of excessive force, [the] Court finds that there is no need to order the disclosure of any portion of the records reviewed.").  *See also Rashada v. City of Buffalo, et al.*, 11-CV-873, 2013 U.S. Dist. LEXIS 16231 (WDNY Feb. 6, 2013) (Scott, M.J) (directing disclosure of documents "relating to any claims of excessive use of force, improper arrest, improper detention, improper prosecution, or racial insensitivity involving the defendants which have been substantiated upon the conclusion of an internal

---

[3] On September 27, 2018, defendants submitted to the Court, for *in camera* review, the personnel files of Flickner and Merrick and the County of Livingston Police Department's records of the December 15, 2016 arrest.  On October 2, 2018, this Court issued an Order directing the Town of Geneseo Justice Court to produce, to defense counsel, additional documents related to the December 15, 2016 arrest. (Dkt. No. 23). The additional documents were provided to this Court, for *in camera* review, on November 7, 2018.
[4] Copies of all of the documents and records reviewed, *in camera*, by the Court will be retained and filed under seal in connection with this Decision and Order.

5

administrative investigation or court proceeding"); *Wright v. Goord*, 04-CV-6003, 2008 U.S. Dist. LEXIS 54021 (WDNY 2008) (Payson, M.J.) (directing search of personnel files for documents relating to disciplinary action or investigations taken against defendants based upon use of excessive force).

While Courts in this District often limit discovery to substantiated complaints or incidents that actually resulted in discipline of an officer, other districts in the Second Circuit have ordered discovery of any complaints of similar conduct by a defendant, whether substantiated or not. *See e.g., Frails v. City of New York*, 236 F.R.D. 116, 117 (EDNY 2006) ("Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable."); *Bradley v. City of New York*, 04 Civ. 8411, 2005 U.S. Dist. 22419 (SDNY Oct. 3, 2005) ("we emphatically reject defendants' contention that 'unsubstantiated' complaints should… not be produced."). Further, there is a stronger argument in favor of disclosure of unsubstantiated complaints in cases, like this one, which involve a Section 1983 claim against a municipality, or *Monell* claim. In *Phillips v. City of New York*, the Southern District of New York Court opined that the purpose of permitting discovery concerning complaint and disciplinary history is that it "may lead to evidence of a pattern, intent and absence of mistake, or support a plaintiff's claim for municipal liability under *Monell*." 277 F.R.D. 82, 83 (EDNY 2011). Similarly, in *Harper v. Port Authority*, the Southern District of New York Court ordered defendants to disclose individual officers' records concerning claims of false arrest, false imprisonment, malicious prosecution, false testimony and other similar misconduct, including unsubstantiated complaints and charges. 05 Civ. 5534, 2006 U.S. Dist. LEXIS 46949, *7

(SDNY July 10, 2006). The Court reasoned that "because [plaintiff] asserts claims based on *Monell*, the [defendant's] knowledge of, and response to, defendants' behavior and complaint history is relevant." *Id.*

Here, the Deputies' personnel files do not contain any records of disciplinary actions for excessive force, false arrest, malicious prosecution or any other conduct similar to that alleged in this lawsuit. With respect to complaints against the Deputies, Flickner's file contains a page stating that "Personnel Complaint 14-10, is filed in the Office of the Secretary to the Sheriff." However, there is no further information about the specific nature of this complaint. Likewise, there is no information as to whether the complaint was substantiated or resulted in discipline against Flickner. Based upon the case law discussed above, the details of this complaint, whether substantiated or not, may be relevant and discoverable if the complaint involved allegations of false arrest, malicious prosecution, abuse of process, assault and battery or other conduct similar to that alleged here. Further, the complaint may be relevant and discoverable even if it is later deemed inadmissible at trial. *See King v. Conde*, 121 F.R.D. 180, 194 (E.D.N.Y. 1988) ("Discovery is of broader scope than admissibility…and discovery may be had of inadmissible matters."); *Barrett v. City of New York*, 237 F.R.D. 39, *41 (EDNY 2006) ("Although unsubstantiated allegations may not be admissible at trial, they may lead to witnesses who have [relevant] evidence."). Thus, the Court concludes that if Personnel Complaint 14-10 involves conduct similar in nature to the behavior alleged in this lawsuit, and if additional information about this complaint is within the custody or control of defendants, those records or documents are to be disclosed to plaintiffs. However, defendants are not required to create documents or produce documents not in their

7

possession. *See Williams v. City of Hartford*, 3:15-CV-00933, 2016 U.S. Dist. LEXIS 57709 (D. Conn. May 2, 2016) ("Rule 34 only requires a party to produce documents that exist at the time of the request; a party cannot be compelled to create a document for its production.").

*Personnel Records: Participation in STOP-DWI*

Plaintiffs further argue that the personnel files are relevant and discoverable because they may contain information about participation in STOP-DWI by Merrick and Flickner. A *Monell* claim cannot be maintained against a municipality unless a plaintiff establishes that the alleged deprivation of his federal constitutional rights resulted from a "governmental custom, policy or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *citing Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, municipal liability may only be found where the execution of a municipal or governmental policy inflicts the injury. *Monell*, 436 U.S. at 691. To hold a municipality liable under Section 1983 for the unconstitutional actions of employees, a plaintiff must prove: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). To that end, where lawsuits involve *Monell* claims, courts have ordered discovery of documents and information that establish a municipality's policies or customs as well as individual defendants' participation in or reliance on those policies or customs. For example, in *Gentile v. County of Suffolk*, the Eastern District of New York Court determined that portions of a government report finding police and prosecutorial misconduct were relevant in a Section 1983 action because the report tended to "establish the existence of a municipal policy or practice [and] also support[ed] plaintiffs'

8

allegation that the police and the District Attorney's Office were likely because of a course of conduct to consistently ignore evidence on the part of the defendant officers and to sanction and cover up any wrongdoing." 129 F.R.D. 435, 445-446 (EDNY 1990). The *Gentile* Court emphasized that "[t]he appropriate inquiry in this *Monell*-type claim focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees on that practice." *Id.* at 446.

Here, plaintiff is alleging that STOP-DWI was an official policy, promulgated by the Sheriff and the County, that caused and encouraged deputies to arrest individuals without probable cause. The Deputies' personnel files contain information about the periods of time Flickner and Merrick were assigned to the STOP-DWI Shift within the Road Patrol Division, their general participation in STOP-DWI, and, in some cases, their performance with respect to the goals of the program. This information is relevant to plaintiffs' claims in that it tends to show: (1) that STOP-DWI existed and the general goals of the program; (2) that the Sheriff and the County valued the program; (3) that Flickner, a road patrol officer, was working the STOP-DWI Shift at the time of Dobson's arrest and had other involvement in the program; and (4) that Merrick previously worked the STOP-DWI Shift and continued to have some involvement with STOP-DWI. Indeed, this information is not probative as to whether there was probable cause to arrest Dobson on September 21, 2016. However, the information does help to establish foundational facts necessary for a *Monell* claim, such as the existence of a policy or program and the individual defendants' knowledge of or reliance on the policy or program. For these reasons, the Court finds that any information in the personnel files related to the Deputies' participation in STOP-DWI is to be disclosed to plaintiffs. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."); *Condit v. Dunne*, 225 F.R.D. 100, 105 (SDNY 2004) ("Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept.").

During its *in camera* review of the personnel files, the Court placed paper tabs on the portions of the personnel files that contain information about the Deputies' participation in STOP-DWI. The Court will return the files, to defense counsel, with the paper tabs indicating the specific information that should be disclosed. It is noted that most of the tabbed-information is contained within the Deputies' yearly performance reviews. The performance reviews contain other information that is not relevant to this case and that should not be disclosed in order to protect the Deputies' privacy. Thus, prior to producing the information, defense counsel is instructed to redact the tabbed-documents to disclose only the information pertaining to the Deputies' involvement in STOP-DWI.

### *The December 15, 2016 Arrest*

Livingston County Police Department and Town of Geneseo Justice Court records indicate that an individual was arrested by Flickner on December 15, 2016 and charged with driving a motor vehicle while impaired by drugs. The individual also received citations for stickers affixed to the rear windshield and a muffler/exhaust violation. Like Dobson, the individual was taken to the Livingston County Sheriff's Department after the arrest. There, Merrick performed a drug evaluation and concurred that the individual was under the influence of narcotics. A breathalyzer test was administered and came back negative for the presence of alcohol. A urine sample was also taken at the time of the arrest. A

toxicology report later indicated that the urine sample was negative for the presence of narcotics. Defendants maintain that records regarding the December 16, 2015 arrest of this individual are not relevant because the incident post-dated Dobson's arrest.

In *Cooks v. Town of Southampton*, a plaintiff asserted Section 1983 claims against an officer and a town after discovering that following his arrest and sentence for possession of controlled substances, the officer involved was investigated for misconduct and may have been under the influence of prescription drugs at or around the time of the arrest. 13-3460, 2015 U.S. Dist. LEXIS 42917 (EDNY Mar. 31, 2015). In rendering a decision on a number of discovery demands, the Eastern District of New York Court concluded that alleged improprieties or misconduct occurring after the arrest were not probative of the municipality's policies and practices at the time of the arrest and therefore did not have to be disclosed. *Id.*

In contrast, other courts in the Second Circuit have held that incidents or complaints occurring after the events at issue in a Section 1983 lawsuit may be relevant and discoverable for reasons other than proving the existence of a municipal policy or custom. In *Barrett v. City of New York*, a plaintiff filed a Section 1983 case alleging false arrest, illegal strip search, malicious prosecution, and fabricated evidence. 237 F.R.D. 39 (EDNY 2006). Plaintiff sought discovery of unsubstantiated civilian complaints and disciplinary records concerning the officers. Defendant opposed the request, in part, because the complaints involved events that occurred after the events in the lawsuit or more than ten years before. The Eastern District of New York Court rejected this argument and found that age did not make the complaints less relevant, since "investigations older than ten years may still be relevant to the current action, for example,

to establish a pattern or knowledge, and should not be barred from discovery based solely on their age." *Id*. Further, the Court held that investigations of civilian complaints that *post-date* the current action "could still be relevant to the case and should be disclosed." *Id*. Indeed, while the complaints may not prove notice to a municipal defendant, "post incident investigations regarding a police officer defendant in a section 1983 case may be relevant to issues of pattern, intent and absence of mistake." *Id*. *See also Wisniewski v. Claflin*, CV 05-4956, 2007 U.S. Dist. LEXIS 27850 (EDNY 2007) (two complaints of similar misconduct that post-dated the action at issue in the lawsuit were relevant and discoverable as they could indicate pattern, intent, or absence of mistake); *Ismail v. Cohen*, 899 F.2d 183 (2d Cir. 1990) (upholding the admission of evidence concerning post-incident misconduct by a police officer defendant in a Section 1983 case where the district court found, pursuant to Rule 404(b), that the misconduct was relevant to issues of pattern, intent, and absence of mistake).

Here, the December 15, 2016 arrest of another motorist, which occurred three months after Dobson's arrest, would not tend to show a pattern or practice by the County or the Sheriff at the time of the events in question. However, like the records in *Barrett*, *Wisniewski* and *Ismail*, the records are potentially relevant as to the Deputies' pattern, intent, lack of mistake or *motis operandi* with regard to their arrest of Dobson. The Court acknowledges that the documents at issue in *Barrett*, *Wisniewski* and *Ismail* pertained to disciplines or complaints against the defendants while the records here do not involve disciplines or complaints. However, the instant records do pertain to a factually analogous arrest involving the same officers where the arrestee was later determined not to have narcotics in his system. Defendants contend that the prior arrest is irrelevant, in

part, because subjective intent or motivation is not to be considered when examining probable cause for an arrest. Notwithstanding, other similar conduct by the Deputies may be admissible for reasons other than intent, such as to demonstrate a pattern by those individuals, a lack of mistake, or a *modus operandi*. Moreover, the concept of discovery is broad and extends to relevant material reasonably calculated to lead to the discovery of admissible evidence. Finally, a determination as to whether any information about the December 15, 2016 arrest is admissible is to be made at the time of trial and will depend, in substantial part, on the specific purpose for which it is introduced in relation to the other evidence offered and arguments made. For these reasons, the Court orders defendants to disclose the Livingston County Police Department and Town of Geneseo Justice Court records of the December 15, 2016 arrest. It is noted that the records involve the arrest of a non-party. To protect their privacy, defense counsel is instructed to redact the individual's name and all other identifying information.

*Conclusion*

For the foregoing reasons, defendants are ordered to produce the following from the personnel files of Brandan J. Flickner and James Merrick: (1) any information in defendants' possession as to Personnel Complaint 14-10, if the complaint involves allegations of false arrest, malicious prosecution, abuse of process, assault and battery, or other conduct similar to the allegations in this lawsuit; and (2) information about the Deputies' participation in STOP-DWI subject to the redactions discussed above. The remainder of the information contained in the personnel files is irrelevant to this litigation and need not be disclosed. Defendants are further ordered to produce records from the Livingston County Police Department and Town of Geneseo Justice Court as to the arrest

13

of another motorist on December 15, 2016, subject to the redactions described above. On or before December 10, 2018, the parties are to confer and submit, to the Court, a proposed amended Case Management Order containing deadlines for any remaining discovery and a date for the filing of dispositive motions.

**SO ORDERED.**

Dated: December 3, 2018
       Buffalo, New York

*/s/ Michael J. Roemer*
MICHAEL J. ROEMER
United States Magistrate Judge